IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| **SHIRLEY A. BALLARD,** | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 1:10-CV-223-BL |
| | § | ECF |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

**THIS CASE** is before the court upon Plaintiff's complaint filed September 30, 2010, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title of the Social Security Act. Plaintiff filed a brief in support of her complaint on February 11, 2011, and Defendant filed a brief on May 13, 2011. The parties consented to having the United States magistrate judge conduct all further proceedings in this case on April 12, 2011 (Doc. 7), and June 15, 2011 (Doc. 15). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for disability insurance benefits on August 1, 2002, alleging disability beginning March 9, 2005. Tr. 28. Plaintiff's application was denied initially and upon

reconsideration. Tr. 28, 42-45, 48-52. Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"), and this case came for hearing before the ALJ on March 9, 2005. Tr. 28, 343-57. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 346-57. The ALJ issued a decision partially favorable to Plaintiff on April 24, 2005. Tr. 24-32.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on July 5, 2002, through the date of his decision, and that Plaintiff had not engaged in substantial gainful activity at any time since July 5, 2002. Tr. 28. Plaintiff has "severe" impairments, including back pain, depression, hypertension, and thyroid problems. Tr. 29. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were generally credible. Tr. 30.

The ALJ found that, from July 5, 2002, to August 14, 2003, Plaintiff was unable to work on a consistent, sustained basis. *Id.* However, beginning August 15, 2003, Plaintiff experienced medical improvement that was related to her ability to work. Tr. 31. Beginning August 15, 2003, Plaintiff retained the RFC to perform the requirements of light work activity, limited to jobs that require only limited positional changes (*e.g.,* stooping and crouching). *Id.* Plaintiff could return to her past relevant work as a waitress and convenience store clerk. Tr. 31-32. Therefore, the ALJ found that Plaintiff was disabled from July 5, 2002, to August 14, 2003, but not thereafter. Tr. 32.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 22, 2005. Tr. 7. On October 2, 2006, the Appeals Council remanded the case back to the ALJ for further proceedings, but only with respect to the issue of disability after August 14, 2003. Tr. 11.

The ALJ conducted a supplemental hearing on November 30, 2007. Tr. 11, 323-42. Plaintiff, represented by an attorney, again testified in her own behalf. Tr. 326-37, 339-41. Barbara Dunlap, a vocational expert ("VE"), appeared and testified as well. Tr. 337-39. The ALJ issued a decision unfavorable to Plaintiff on June 13, 2008. Tr. 8-18.

In his opinion the ALJ again noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on August 15, 2003, through the date of his decision, and that Plaintiff had not engaged in substantial gainful activity at any time since August 15, 2003. Tr. 12. Plaintiff has "severe" impairments, including degenerative disc disease, status-post lumbar laminectomy, and obesity. Tr. 13. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was again required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 12, 15.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 15.

The ALJ found that Plaintiff retained the RFC to perform the full range of light work activity, limited to only occasional climbing of ramps and stairs; only occasional balancing, stooping, kneeling, crouching, or crawling; and no climbing ladders, scaffolds, or ropes. Tr. 13. He found that Plaintiff could return to her past relevant work as a waitress, or fast food crew chief, and as a convenience store clerk. Tr. 17. Therefore, Plaintiff was not disabled from August 14, 2003 through November 30, 2007. Tr. 18.

Plaintiff submitted a Request for Review of Hearing Decision/Order on July 25, 2008. Tr. 7. The Appeals Council denied Plaintiff's request and issued its opinion on September 14, 2010, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 3-6. The ALJ's decision, therefore, became the final decision of the Commissioner.

On September 30, 2010, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled after August 14, 2003.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the

Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 4 that Plaintiff was not disabled after August 14, 2003, because she could return to her past relevant work as a waitress, or fast food crew chief, and as a convenience store clerk. Tr. 18.

### III.  DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that Plaintiff's mental impairments were not "severe"; failed to give the opinion of the treatment physicians controlling weight; erred in making the credibility determination; and erred by picking and choosing only the evidence to support a determination that Plaintiff was not disabled.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

A. **Whether the ALJ erred in finding that Plaintiff's mental impairments were not "severe"**

Plaintiff argues that the ALJ erred by failing to find that her mental impairments were not "severe" at step 2 of the sequential evaluation process. The ALJ found that these impairments did not impose limitations on Plaintiff's ability to perform work-related activity. Plaintiff argues the medical record demonstrates that her mental impairments, including major depressive disorder, limited her capacity to work.

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987). The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen*. In *Stone v. Heckler,* the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

752 F.2d 1109, 1101 (5th Cir. 1985) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). In *Loza* the Court held that the standard set forth in *Stone* remained the correct standard. 219 F.3d 378 at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992). Thus, to meet the severity threshold in the Fifth Circuit, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work.

The ALJ indicated in his decision that he had evaluated Plaintiff's mental impairments under Section 12.00 of the Listing of Impairments, 20 C.F.R. Part 404, Subpt P, App. 1, as described in 20 C.F.R. § 404.1520a. Tr. 29. He found that there are no greater than "mild" limitations in Plaintiff's activities of daily living, social adequacy, or concentration attributable to any mental impairment and further found that Plaintiff has not experienced any episodes of decompensation, citing C.F.R. § 404.1521a(c)(1). *Id*. The ALJ noted that Plaintiff had been diagnosed with depression, although Dr. Scott Brown reporting that her limitations were based on back pain. *Id*. The ALJ noted that Plaintiff was found to have Global Assessment of Functioning ("GAF")[1] scores of 58 and 60[2] on Axis V upon examination by two separate psychologists. Tr. 14. The ALJ found that Plaintiff's mental impairment failed to produce more than a minimal effect on her ability to perform basic work activities. *Id*.

---

[1] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[2] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd*, 239 F.3d at 705. The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2). The PRTF represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

The ALJ indicated that he had considered Plaintiff's mental impairment of Section 12.04 of the Listing of Impairments, but found that none of the "B" and "C" criteria were met. Tr. 14. The

ALJ noted Plaintiff's reports of mostly staying at home, having one good friend, and having a good marriage. *Id*. The ALJ found that Plaintiff retained the ability to perform basic work activities and that her mental impairment was not "severe." Tr. 15.

Plaintiff underwent a psychological evaluation by Dr. R. Scott Brown, a clinical psychologist, on September 16, 2003. Tr. 269-72. Dr. Brown opined that Plaintiff's diagnoses included major depression, moderate, recurrent, without psychotic features, as well as an occupational problem. Tr. 272. He noted Plaintiff's chronic back pain, and opined that her prognosis was limited because of her pain and inability to perform previous jobs skills. *Id*. He opined that Plaintiff's GAF score was 58. *Id.*

Plaintiff later underwent an examination by Dr. Norsworthy, a clinical psychologist, on July 2, 2004. Tr. 275-70. Dr. Norsworthy noted Plaintiff's report of treatment by her family physician for depression a year prior to the injury sustained on July 5, 2002. Tr. 275. Plaintiff reported that she stopped taking a prescribed antidepressant after about a year. *Id*. Dr. Norsworthy noted Plaintiff's depressive mood and affect. Tr. 276-77. The psychological examined opined that Plaintiff's diagnoses including pain disorder and major depressive disorder with a GAF score of 60. Tr.277. Norsworthy indicated that these issues were related to pain in the lower extremity and back and opined that the pain condition exacerbated a pre-existing major depressive disorder. *Id*. Norsworthy suggested that Plaintiff have a series of twelve mental health treatments. *Id*.

Plaintiff argues that the ALJ ignored the findings of these examining psychologists as well as the information in the record indicating Plaintiff's history of depression in finding Plaintiff's mental impairment was not "severe."

However, the ALJ discussed Plaintiff's reports with regard to her activities and social function, as well as the opinions of the examining psychologists who both indicated that Plaintiff's

limitations with regard to performing work activity were a result of or secondary to the pain she experiences. Tr. 14-15. The ALJ noted that the psychologists reported that Plaintiff's memory was intact, that she stayed on task, and that although she was prescribed antidepressant medication by her primary physician, she discontinued the same.

In this case the ALJ appropriately evaluated Plaintiff's mental impairment and found such impairment was not "severe." The ALJ's severity determination is supported by substantial evidence in the record. As the ALJ correctly noted, the evidence of record does not make a *de minimis* showing that Plaintiff's mental impairment was severe enough to interfere with her ability to do work during the relevant time period. The ALJ applied the correct legal standard in making his severity determination. Because the ALJ did not err in making his severity determination and because substantial evidence supported his finding that Plaintiff's mental impairments did not impose any restrictions on her ability to perform work related activity during the relevant time period, the ALJ did not err by failing to incorporate any limitations based on such impairments in his RFC finding.

**B.     Whether the ALJ erred by failing to appropriately weigh the opinion of the treating physicians**

Plaintiff argues that the ALJ erred by failing to give controlling weight to two of her treating physicians, Dr. Kevin Gill, a neurosurgeon, and Dr. Edward Brandecker, a neurologist. Plaintiff particularly points to Dr. Gill's opinion that Plaintiff is not "really capable of returning to work" and Dr. Brandecker's statement that Plaintiff was "unable to work at this time secondary to both severe lumbar pain and right lower extremity radicular pain."

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling

weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The opinion of a treating source is generally given more weight than a non-examining source. 20 C.F.R. § 404.1527(d)(1).

Good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). SSR 96-2p provides that a medical source statement from a treating source which is well-

supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*

Plaintiff points to two statements or nonmedical opinions by treating physicians indicating that she was unable to work. To the extent that Drs. Brandecker and Gill opined that Plaintiff could not work, such determinations were entitled to no special significance. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as

'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620. The ALJ indicated in his opinion, however, that he had considered such opinions, and the degree to which such opinions were consistent with the medical evidence of record. Tr. 17. The ALJ correctly noted that neither Dr. Gill nor Dr. Brandecker specifically evaluated Plaintiff's residual functional capacity, nor did they indicate the specific limitations imposed by her medically determinable impairments which affected her ability to perform work activity. *Id*. The ALJ compared the medical evidence of record with Plaintiff's subjective complaints and formulated an RFC finding which reflected additional limitations beyond those found by the State agency medical consultants.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d at 790. The ALJ did not err by failing to consider or give appropriate weight to the opinions of Plaintiff's treating physicians as neither whether Plaintiff was disabled or unable to work nor as to the limitations imposed therein by Plaintiff's impairments.

C.  **Whether the ALJ erred in making his credibility determination.**

Plaintiff argues that the ALJ erred in making his credibility determination by "attacking" Plaintiff's credibility. In his opinion, the ALJ indicated that Plaintiff's credibility was called into question insofar as she chose to increase her smoking habit despite being instructed that smoking would affect her recovery, as well as by her decision to refuse the trial of a dorsal column stimulator. Tr. 16

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983)). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024

(5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

In his opinion the ALJ found based on the evidence of record that Plaintiff's exertional and nonexertional capability to perform work activities was limited by her medically determinable severe impairments. Tr. 16. The AL noted Plaintiff's reports of constant and extreme pain. *Id*. The ALJ discussed her testimony with regard to her treatment, her pain, her medication, side effects experienced therein, and her activities. Tr. 15. The ALJ noted that Plaintiff reported engaging in light housework, driving a motor vehicle, going to the grocery store with her husband, reading, watching television and swimming for exercise. Tr. 15-16.

The ALJ noted her increased smoking and that her testimony regarding the dorsal column stimulator conflicted with the evidence of record indicating that such treatment was suggested to improve her symptoms. The record reflects Dr. Brandecker's belief that the spinal cord stimulator offered the best option for relief without resorting to chronic opioids. Tr. 283. The record also reflects Plaintiff's reports to Dr. Norsworthy's report of Plaintiff's reluctance to pursue the dorsal cord stimulator and her preference to seek other treatment. Tr. 278. As a result of Plaintiff's reluctance, Dr. Norsworthy recommended that Plaintiff not undergo the trial of the dorsal cord stimulator and that her medication be evaluated. Tr. 278-79.

The ALJ noted that despite testimony as to substantial side effect from medication, such side effects were not reflected in the findings of the two consultative examinations she underwent. Tr. 16. The ALJ noted that Plaintiff increased her smoking, despite being told it would affect her recovery, and that she testified that her surgery was not successful. Tr. 15.

In his opinion, the ALJ noted that although the State agency medical consultants opined that Plaintiff was able to perform work at the medium exertional level, in light of her complaints of pain, he incorporated additional limitations into his RFC finding. Tr. 16. The ALJ ultimately found that Plaintiff retained the RFC to perform a range of work at the light exertional level, further limited to only occasional climbing of ramps and stairs; only occasional balancing, stooping, kneeling, crouching, or crawling; and no climbing of ladders, scaffolds or ropes. Tr. 13.

The record and the ALJ opinion demonstrate that the ALJ appropriate discussed and considered the Plaintiff's subjective complaints, reports of her symptoms and activities, and the medical evidence of record in making his credibility determination. The ALJ did not err in making the credibility determination, which is supported by substantial evidence.

C.      **Whether the ALJ erred by only picking and choosing among the evidence**

Plaintiff argues that the ALJ erred by only choosing to rely upon the evidence in the record which supported a finding that she was not disabled. She argues that the finding that her mental impairments were not "severe" at step 2, the failure to give controlling weight to the opinions of the treating physician, and, with respect to his credibility determination, noting that Plaintiff did not want to pursue the dorsal cord stimulator all show a continuing patters of picking and choose only the evidence supporting the decision that Plaintiff was not disabled.

However, in his opinion, the ALJ opinion discussed the whole of the evidence; the ALJ did not "pick and choose" only the evidence which supported his position. *See Loza*, 219 F.3d at 393. The record demonstrates that the ALJ extensively discussed Plaintiff's subject reports and complaints, her testimony, the opinions and treating notes of the treating physicians and examining psychologists. The ALJ appropriately compared Plaintiff's testimony with the medical evidence of

record, and his discussion does not only address those portions of the evidence supportive of his finding that Plaintiff was not disabled because she could return to her past relevant work.

The ALJ's severity, RFC, and disability determinations, as well as his opinion as a whole, are supported by substantial evidence in the record.

### IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision is supported by substantial evidence in the record and should be affirmed, that Plaintiff's complaint should be **DISMISSED WITH PREJUDICE**, and that judgment should be entered in favor of the Defendant.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed September 30, 2009 (Doc. 1), is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this Memorandum Opinion and Order shall be entered accordingly.

**SO ORDERED**.

DATED this 16th day of February, 2012.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE